# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JAIME JAMES ROA | § | |
| | § | Civil Action No. 4:16-CV-115 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| CITY OF DENISON, ET AL. | § | |
| | § | |

## MEMORANDUM ADOPTING REPORT AND
## <u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

Came on for consideration the reports of the United States Magistrate Judge in this action,
this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636.
On August 29, 2017, the reports of the Magistrate Judge (Dkts. #75, 76) were entered containing
proposed findings of fact and recommendations that Plaintiff's Motion for Leave to File Second
Amended Complaint (SAC) to Serve New Defendants (Dkt. #67) be denied, and that Defendants'
Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1) (Dkt. #2) and Defendants' Supplemental
Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #64) each be granted.  Having received
the reports and recommendations of the Magistrate Judge (Dkts. #75, 76), having considered
Plaintiff's timely filed objections (Dkt. #79), and having conducted a de novo review, the Court is
of the opinion that the Magistrate Judge's reports (Dkts. #75,76) should be adopted as set forth
below.

## BACKGROUND

On February 2, 2016, Plaintiff Jaime "James" Roa filed this lawsuit against
Defendants Denison Mayor Jared Johnson ("Johnson"), City Manager Jud Rex ("Rex"), City
Development Services Director Gabe Reaume ("Reaume"), Judge Philip Shaffer
("Judge Shaffer"), Code Enforcement Officer Michael Fitzpatrick ("Fitzpatrick"), and Building
Official Betty Floyd ("Floyd").  Plaintiff alleges that Defendants acted with racial and/or ageist

animus in issuing citations for code violations against two of Plaintiff's properties: 715 W. Sears St., Denison, Texas 75020 (the "Sears Property") and 517 W. Owings St., Denison, Texas 75020 (the "Owings Property") (collectively the "Properties"). (Dkt. #1). On April 28, 2017, Plaintiff amended his complaint (Dkt. #56), naming additional defendants: the City of Denison (the "City"); City Council Members Matt Hanley, Bill Malvern, Ken Brawley, Michael Baecht, and Janet Gott (collectively the "City Council"); Britton Brooks ("Brooks"); Judge Jim Fallon ("Judge Fallon"); Tom Speakman; Robert Hanna; Dale Jackson; Herald Democrat reporters Michael Hutchins, Jonathan Cannon, Donna Hunt; and "Fire Dpt. Gordan Weger, Ray" (Dkt. #56).[1] Hereinafter, all defendants named in the Amended Complaint are collectively referred to as "Defendants." As employed by the Magistrate Judge, the Court more specifically refers to the following sets of Defendants as indicated: Johnson, Rex, Reaume, Fizpatrick, Floyd, the City Council members, and Weger as the "Individual City Defendants;" Hutchins, Cannon, and Hunt as the "Media Defendants;" Judges Shaffer and Fallon as the "Judicial Defendants;" and Brooks as the "Prosecutor."

Sometime around 2008 or 2009, Defendant Fitzpatrick, a City Code Enforcement Officer, ordered Plaintiff's arrest for code violations on the Sears Property (Dkt. #56 at 1). Several years later, in April 2013, an individual offered to purchase the Sears Property from Plaintiff with the intent to demolish it (Dkt. #56 at 1). After he received this offer, Plaintiff met with former City Manager Robert Hanna, to discuss the Sears Property, wherein Hanna threatened that if Plaintiff declined to sell the Sears Property, the City would "enforce ordinances" (Dkt. #56 at 1). Plaintiff refused the offer, and subsequently received letters from the City's Code Enforcement Officers (Dkt. #56 at 2). In May 2013, the City sent Plaintiff three letters indicating that the Sears Property:

---

[1] To date, Plaintiff has failed to serve Defendants Brooks, Judge Fallon, Speakman, Hanna, Jackson, Hutchins, Cannon, and Hunt.

(1) needed certain repairs; (2) should be demolished; and/or (3) was on the City's demolition list (Dkt. #56 at 2). On July 1, 2013, Plaintiff received a citation for various code violations at the Sears Property (Dkts. #56 at 2; #3 at 6-7). On July 18, 2013, Plaintiff entered a "not guilty" plea before Judge Shaffer in relation to the Sears Property citation (Dkt. #56 at 2). Judge Shaffer found Plaintiff guilty of violating "Minimum Standards charges," (*see* Dkt. #1 at 4), a Class C misdemeanor (Dkt. #2 at 14), and fined Plaintiff $150.00 (Dkt. #56 at 2).

In July 2013, Plaintiff received a letter from the City that the Owings Property was also on the City's demolition list (Dkt. #56 at 11). Plaintiff's request for a permit to install a new roof on the Owings Property received no response from the City (Dkt. #56 at 12). On November 27, 2013, the City obtained a *lis pendens* on the Owings Property, which Plaintiff claims made it "unsellable, unusable, etc." (Dkt. #56 at 12). On January 23, 2014, Plaintiff received a citation for code violations regarding the Owings Property. Plaintiff again argued before Judge Shaffer that the citation was groundless (Dkt. #56 at 12). Judge Shaffer found Plaintiff guilty, fined Plaintiff $150.00, and is alleged to have "yell[ed] at [Plaintiff] in an extremely angry way" (Dkt. #56 at 12). Notably, Plaintiff sold the Owings Property on October 27, 2014 (Dkt. #56 at 12).

On August 19, 2013, the City Council convened, with Councilmembers Hanley, Malvern, Brawley, Baecht, and Gott present.[2] At the meeting and after discussion, the City Council unanimously approved demolition of the Sears Property (Dkt. #56 at 4). At the meeting, Defendant Johnson "did not suggest to have 10 days to pull permit and six months to complete [repair] work, like he suggested in a recent case" (Dkt. #56 at 4).[3] Plaintiff allegedly received "several harassing letters" from the City after the meeting (Dkt. #56 at 5).

---

[2] Hanna, Dale Jackson (Chief Building Official), and Defendant Johnson, among others, were also present at the Council meeting (Dkt. #56 at 3).

[3] To date, Plaintiff has not provided any information about this other "recent case," however, the Court assumes Plaintiff refers to the proceedings on the Owings Property, which Plaintiff no longer owns.

On September 18, 2013, Plaintiff filed suit in the 15th Judicial District Court, Grayson County, Texas, styled *Roa v. City of Denison, Texas*, No. CV-13-1732 ("2013 State Court Action") (Dkt. #56 at 4-5, 8-11). Plaintiff sought to appeal the City Council decision to demolish the Sears Property (Dkt. #2, Ex. 1 at 3). Plaintiff asserted that the Sears Property was "structurally sound," "all the repairs needed are cosmetic," and that his input "ha[d] not been included in the decision making process, putting the whole process outside federal regulations" (Dkt. #2, Ex. 1 at 3). Plaintiff amended his petition to further request an injunction to stop the City from demolishing the Sears Property and declare the City's demolition regulations unconstitutional and void (Dkt. #2, Ex. 1 at 4). On September 27, 2013, Plaintiff alleges that during the pendency of this suit, at the direction of Community Development Administrator Tom Speakman, Chief Building Official Jackson, a member of the fire department, and a police sergeant trespassed onto the Sears Property when Plaintiff, his brother, his attorney, and his attorney's friend were present. Plaintiff alleges that during this encounter, Jackson admitted the Sears Property did not need to be demolished (Dkt. #56 at 8). Ultimately, after a hearing on October 17, 2013, the state court granted the City's plea to the jurisdiction and dismissed the action with prejudice, finding the City was entitled to governmental immunity from Plaintiff's lawsuit (Dkt. #2, Exs. 4, 7 at 2). Plaintiff claims Judge Fallon, who presided over the 2013 State Court Action, "disrespected and threatened my African American Attorney" and "chose to believe the false statements the attorney for the [C]ity made" (Dkt. #56 at 8).

On March 17, 2014, the Fifth District Court of Appeals issued a memorandum opinion dismissing Plaintiff's appeal for his failure to file a brief that satisfied Texas Rule of Appellate Procedure 38 (Dkt. #2, Ex. 9 at 4). On October 21, 2015, the appellate court subsequently denied Plaintiff's Amended Motion to Recall Mandate (Dkt. #2, Ex. 11 at 2). On January 6, 2016, the

Supreme Court of Texas denied Plaintiff's motion for extension of time to file petition for review (filed on December 23, 2015). *Roa v. City of Denison*, No. 05-13-01594-CV, 2015 WL 1213244, at *1 (Tex. App.—Dallas Mar. 17, 2015), *reh'g overruled* (Apr. 28, 2015). Because Plaintiff filed his motion for extension of time more than sixty days from the date of the appellate court's final ruling, the judgment in the 2013 State Court Action was final. *See* Tex. R. App. P. 53.1, 53.7(a)(2), (f).

During the pendency of Plaintiff's state court appeals, on October 20, 2015, Plaintiff claims he received a letter from the City's Development Services Director, Reaume, again stating the City's intent to demolish the Sears Property (Dkt. #56 at 13). Around January 1, 2016, Plaintiff requested a permit to fence the Sears Property and convert it into apartments (Dkt. #56 at 13). Plaintiff alleges the City refused his permit request and told Plaintiff the Property would be demolished in two weeks (Dkt. #56 at 13-14). On January 20, 2016, a letter from Reaume was placed on the Sears Property stating demolition would start on or after February 1, 2016 (Dkt. #56 at 15). On January 21, 2016, Plaintiff received a letter from Floyd confirming denial of Plaintiff's permit request (Dkt. #56 at 15). Plaintiff filed the instant suit on February 2, 2016.[4]

Plaintiff asserts that all Defendants are liable for: (1) racial discrimination, procedural due process, substantive due process, and equal protection violations under 42 U.S.C. § 1983; (2) violating 18 U.S.C. § 371 with a conspiracy "to commit the hate crime of destroying a[n] historic building, and the wealth of [an] Hispanic Entrepreneur;" (3) age discrimination—namely, infringing upon Plaintiff's "rights…to enjoy his retirement" and "[p]sychological abuse of the

---

[4] Ongoing throughout this dispute, Plaintiff asserts the Herald Democrat, the local newspaper, and Michael Hutchins, Jonathan Cannon, and Donna Hunt, some of the Herald Democrat's reports, "amplified" the City's racist and ageist treatment of him by publishing articles following the proposed Sears Property demolition (Dkt. #56 at 5-6, 8, 15-17, 28). Plaintiff alleges the Herald Democrat acted with improper motive in publishing these articles because the newspaper did not publish any similar articles about a collapsed building on the main street in Denison (Dkt. #56 at 16). Plaintiff also conversely credits the Herald Democrat with publishing Plaintiff's editorials in favor of keeping the Sears Property intact (Dkt. #56 at 6).

elderly"—under the Older Americans Act Reauthorization Act ("OAA") and Senate Resolution 102 (113th Congress); (4) race discrimination under 42 U.S.C. § 1981; (5) discrimination under the Americans with Disabilities Amendments Act (42 U.S.C. § 12101 *et seq.*) ("ADA"); (6) denying Plaintiff the "right to work" as a real estate entrepreneur under Universal Declaration of Human Rights ("UDHR"); and (7) "psychological abuse, intimidation, harassment, deceptive practices" in violation of Texas law (Dkt. #56 at 1-2, 30, 32-33). Plaintiff also seeks an order "declar[ing] the order of demolition [for the Sears Property] unlawful and void and of no force or effect and [to] permanently enjoin its enforcement by [D]efendants" presumably through Texas Local Government Code section 214.001 (Dkt. #56 at 33).

On March 4, 2016, Defendants City of Denison, Johnson, Rex, Reaume, Judge Shaffer, Fitzpatrick, and Floyd filed a Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1) (Dkt. #2). On March 17, 2016, Plaintiff filed his Response to Defendants' Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1) (Dkt. #3). On March 25, 2016, Defendants filed their Reply (Dkt. #4). On April 6, 2016, Plaintiff filed his Sur-Reply (Dkt. #5). After holding a hearing, the Court ordered that all substantive discovery be stayed to allow the Court to consider the Original Motion to Dismiss (Dkt. #31). On December 19, 2016, the Magistrate Judge entered a Report and Recommendation that detailed the deficiencies in Plaintiff's Complaint and recommended that Defendants' Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed (Dkt. #40). The Court also twice extended Plaintiff's deadline to file his Objection to the Report and Recommendation to (Dkts. #44, #51). On March 29, 2017, having reviewed Plaintiff's objections and because it "desire[d] to consider the entirety of Plaintiff's factual allegations and/or claims against the Defendants so that it may fully address each issue raised by Plaintiff in the instant suit," the Magistrate Judge withdrew the initial Report and Recommendation and ordered

Plaintiff to file an amended complaint setting forth "*any and all* factual allegations and/or claims asserted by Plaintiff against the Defendants in this matter" (Dkt. #54).

On April 28, 2017, Plaintiff filed his Amended Complaint (Dkt. #56). On June 19, 2017, Defendants the City of Denison, Johnson, Rex, Reaume, Judge Shaffer, Fizpatrick, and Floyd filed a Supplemental Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #64), moving to dismiss this action. Plaintiff failed to respond; the Court extended Plaintiff's deadline to respond to August 1, 2017 (Dkt. #65). On August 1, 2017, Plaintiff responded (Dkt. #69). In addition, on July 28, 2017, Plaintiff sought leave to file a second amended complaint, which asserted yet further new claims and defendants (Dkt. #67).

On August 29, 2017, the Magistrate Judge entered two reports (Dkts. #75, 76): one recommending Plaintiff's Motion for Leave to File Second Amended Complaint (SAC) to Serve New Defendants (Dkt. #67) be denied (Dkt. #75); and the second recommending that Defendants' Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1) (Dkt. #2) and Defendants' Supplemental Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #64) be granted (Dkt. #76). Plaintiff filed objections to the reports on September 22, 2017 (Dkt. #79).

## OBJECTIONS

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). The Magistrate Judge recommended that Plaintiff's Motion for Leave to File Second Amended Complaint (SAC) to Serve New Defendants (Dkt. #67) be denied because: (1) Plaintiff has been previously provided with opportunities to file an amended complaint setting forth any and all factual allegations and/or claims asserted by Plaintiff in this matter; (2) Plaintiff may not further

amend his complaint as a matter of course; (3) justice does not require any such amendment following consideration of each of the recognized factors; and (4) leave to amend the added allegations and claims would be futile as Plaintiff's proposed allegations do not cure the deficiencies raised in Defendants' Motions to Dismiss.

The Magistrate Judge further recommended that Defendants' Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1) (Dkt. #2) and Defendants' Supplemental Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #64) be granted (Dkt. #76). In considering the Court's subject matter jurisdiction, the Magistrate Judge found that: (1) Plaintiff's claims (namely, claims under OAA, ADA, and the U.S. Constitution) did indeed invoke federal jurisdiction; (2) Plaintiff's state law tort claims must be dismissed for lack of jurisdiction because the City and Individual Defendants are immune under the Texas Tort Claims Act; and (3) Plaintiff's request for declaratory relief from the demolition order must be dismissed for lack of jurisdiction as Plaintiff failed to file a petition for a writ of certiorari prior to invoking the Court's jurisdiction. In deciding Defendants' claim and issue preclusion arguments, the Magistrate Judge found that res judicata and collateral estoppel barred: (1) Plaintiff's appeal of the City's demolition order through Texas Local Government Code § 214.0012; (2) constitutional challenges to the City's demolition regulations as violations of Equal Protection, Procedural Due Process, and/or Substantive Due Process through Section 1983,; (3) violations of the OAA; and/or (4) any request for injunctive relief from City's demolition order. In considering whether Plaintiff stated a claim for relief, the Magistrate Judge found that: (1) Plaintiff's conclusory allegations failed to state a claim for race-based discrimination under § 1981 because Plaintiff did not demonstrate that "his race played any part in Judge Fallon's decision-making process or that Judge Fallon allowed Plaintiff's race to at all effect Plaintiff's rights 'to sue, be part[y], [or] give evidence' in the 2013 State Court Action;"

(2) Plaintiff failed to state an equal protection claim because his allegations did not demonstrate "that City deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the City's or the Individual City Defendants' positions;" (3) Plaintiff failed to state a violation of his procedural due process because he failed to allege and the record did not reflect that Defendants deprived him of notice and a meaningful opportunity to be heard; (4) Plaintiff failed to state a violation of his substantial due process because he failed to allege and the record does not show that any of the actions the Defendants took are "arbitrary or conscience shocking, in a constitutional sense;" (5) Plaintiff's conspiracy claim fails because "18 U.S.C. § 371…has no application here….[and] there are no factual allegations revealing Defendants' participation in an illegal agreement;" (6) Plaintiff fails to state a claim for relief under the ADA because his disability of "being a 'slow reader and writer in English' because he is not a native speaker….does not meet the definition of "disability" under the ADA;" and (7) Plaintiff fails to state a claim for relief under OAA because "the Older Americans Act does not create individual rights enforceable under Section 1983." In considering Defendants' assertion of their qualified immunity defense, the Magistrate Judge found that "Plaintiff's Amended Complaint fails to allege sufficient facts to establish that any of the Individual Defendants violated Plaintiff's constitutional rights; accordingly, the Individual Defendants could be entitled to qualified immunity." Regarding Plaintiff's potential challenge to his criminal conviction, the Magistrate Judge found that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any such challenge. Finally, the Magistrate Judge found that Plaintiff's claims against the unserved and defaulted defendants should be dismissed because these defendants "may generally derive the benefit of a defendant party's demonstration that the plaintiff has no cause of action."

Broadly construing his Objection,[5] Plaintiff objects to the Magistrate Judge's recommendation that the Court deny his Motion for Leave to File Second Amended Complaint (SAC) to Serve New Defendants (Dkt. # 79). Specifically, Plaintiff objects that: (1) his Second Amended Complaint was "pre-approved for filing, because of this Court's order" and therefore, he did not need to allege any "grounds for request to file;" (2) the Magistrate Judge's conclusion did not consider his *pro se* status and disability; (3) the Magistrate Judge's conclusion that Plaintiff's Second Amended Complaint did not cure all pleading deficiencies and further amendment would be futile is incorrect; (4) the Magistrate Judge failed to recognize it was Defendants who acted with dilatory motive, not Plaintiff, by "changing Counsel, re-litigating issues already refuted;" (5) the Magistrate Judge nonsensically concluded that granting Plaintiff leave to amend would result in undue prejudice; (6) the Magistrate Judge erred in not affording weight to his lawn-mowing responsibilities and attendance at educational programs (Dkt. #79 at 2-11).

Plaintiff also seemingly objects to the Magistrate Judge's recommendation that the Court grant Defendants' Motions to Dismiss (Dkt. # 79). Specifically, Plaintiff objects that the Magistrate Judge's conclusions are incorrect because it excluded consideration of Plaintiff's Second Amended Complaint (Dkt. #79 at 10-15). Subject to his sole objection that the Magistrate Judge's findings are all incorrectly premised on the consideration of only Plaintiff's First Amended Complaint, Plaintiff does not specifically object to the Magistrate Judge's findings that: (1) Plaintiff's claims invoke federal jurisdiction; (2) the City and Individual Defendants are immune under the Texas Tort Claims Act from Plaintiff's state tort claims; (3) Plaintiff's failure

---

[5] Throughout his Objection (Dkt. #79), Plaintiff makes multiple nonsensical arguments, namely citing passages of the Bible, quotations from Pope Francis and Albert Einstein, and references to chess player, Bobby Fisher, as authority for his contentions that he is entitled to relief in this action.

to file a petition for a writ of certiorari prior to invoking the Court's jurisdiction bars Plaintiff's request for declaratory relief from the demolition order; (4) res judicata and collateral estoppel barred Plaintiff's appeal of the City's demolition order and challenges to the City's demolition regulations; (5) Plaintiff's conclusory allegations failed to state a claim for race-based discrimination under § 1981; (6) Plaintiff failed to state an equal protection claim; (7) Plaintiff failed to state a violation of his procedural due; (8) Plaintiff failed to state a violation of his substantial due process; (9) Plaintiff's conspiracy claim fails because 18 U.S.C. § 371 does not apply to this case and Plaintiff failed to properly allege a conspiracy claim; (10) Plaintiff fails to state a claim for relief under the ADA; (11) Plaintiff fails to state a claim for relief under OAA; (12) because Plaintiff fails to allege sufficient facts to establish that any of the Individual Defendants violated Plaintiff's constitutional rights, the Individual Defendants are entitled to qualified immunity; (13) *Heck v. Humphrey*, 512 U.S. 477 (1994) bars any challenge to Plaintiff's criminal conviction; and (14) Plaintiff's claims against the unserved and defaulted defendants should be dismissed because these defendants "may generally derive the benefit of a defendant party's demonstration that the plaintiff has no cause of action."

## 1. *Plaintiff's Motion for Leave to File His Second Amended Complaint*

### A. *Pre-Approval for Filing*

Plaintiff objects that the Magistrate Judge erred in recommending denying his request for leave because his Second Amended Complaint "was pre-approved for filing, because of this Court's order" (Dkt. #79 at 2). Plaintiff asserts that the Court's Order from July 11, 2017, allowing Plaintiff further opportunity to respond to Defendants' Motions to Dismiss by August 1, 2017, also granted him leave to file a Second Amended Complaint (Dkt. #79 at 2). Accordingly, because Plaintiff filed his Second Amended Complaint on July 28, 2017, he contends that he timely

complied with the Court's Order and did not need to seek leave to amend. (Dkt. #79 at 2). Plaintiff also contends that he "naively used the 'Motion for Leave to File' [(Dkt. #67)], which was not needed, never imagining that that could be used against his filing it" (Dkt. #79 at 3).

Plaintiff is incorrect. In the Court's Order dated July 11, 2017, the Court ordered Plaintiff to file a response to Defendants' Motions to Dismiss (Dkt. #65). Nowhere in the Court's July 11, 2017 Order does the Court order Plaintiff to file an amended complaint or grant Plaintiff leave to amend without first seeking the Court's permission. Plaintiff incorrectly infers that he was granted leave to file his Second Amended Complaint, but such is not the case. Plaintiff had already been directed by the Court to amend his complaint (Dkt. #54). In its March 29, 2017 Order, the Court ordered Plaintiff to "file an Amended Complaint on or before April 28, 2017" and identified the various pleading deficiencies Plaintiff should remedy (Dkt. #54).

Additionally, Plaintiff makes the argument multiple times throughout his Objection that the Court's extension of thirty days for him to file an amended complaint was simply not enough time (Dkt. #79 at 11). This argument is meritless because Plaintiff did not move for an additional extension of time; Plaintiff has previously in this case sought additional time by filing a motion requesting an extension of time (Dkts. #44, #51). Plaintiff may not now feign ignorance of how to request an extension of time.

Moreover, Plaintiff's proposed complaint does not demonstrate that he utilized any of the additional time he took to file his Motion for Leave to Amend and proposed complaint to amend any of the deficiencies brought to his attention in the Magistrate Judge's prior Report and Recommendation. Even broadly construing his sixty-five page proposed complaint, Plaintiff continues to raise baseless and nonsensical arguments that he is entitled to relief against

Defendants.[6]  Importantly, even if the Magistrate Judge's recommendation that the Court deny Plaintiff leave to file his Second Amended Complaint was made in error, it does not alter the ultimate result: that Plaintiff's claims should be dismissed.  In the Report recommending granting Defendants' Motions to Dismiss, the Magistrate Judge explicitly stated that for the sake of completeness, it considered Plaintiff's Second Amended Complaint in its analysis, and still found it to be lacking (Dkt. #76 at 8, n. 5).  Similarly, in the Report recommending denial of Plaintiff's Motion for Leave, the Magistrate Judge considered Plaintiff's Second Amended Complaint and found it to be a futile amendment (Dkt. #75 at 4).  As discussed *infra*, these conclusions are correct.  Accordingly, Plaintiff's objection is overruled.

### B.      Plaintiff's Status

Plaintiff argues that the Magistrate Judge also erred in its recommending that his Motion for Leave be denied because the Magistrate Judge did not consider his disability (that he is not a native English speaker) and his status as a *pro se* litigant (Dkt. #79 at 3-4, 6).  Plaintiff contends that "this Court should have considered not only Plaintiff's rights due to his Pro Se status, but also in conjunction with [OAA] and [ADA]" (Dkt. #79 at 3-4).  Plaintiff argues that he "[has] a disability and it is that [he] is not a native speaker of English, and that affects everything….[and] affects [his] work as Pro Se since it includes all the 'major life activities mentioned'" (Dkt. #79 at 6).  Plaintiff concludes that by "overlooking [ADA and OAA] and protected rights for Plaintiff has been, at the very least, a big error" (Dkt. #79 at 7).  The ADA and OAA do not guide the Court's analysis regarding whether Plaintiff should be given leave to file his Second Amended

---

[6] Plaintiff does not discuss his claims until page 13 of the proposed complaint.  Plaintiff begins his proposed complaint with a five-page discussion of immigration in America and the issue of racism in the United States (including Wikipedia, Merriam-Webster, and Dictionary.com's definitions of racism).  Plaintiff then transitions to another five-page discussion of his "education highlights [and] praise for his Accomplishments," wherein he details his many achievements in language education, chess, art education, general education, real estate education, and architectural education.

Complaint. Moreover, although Plaintiff's status as a *pro se* litigant does allow Plaintiff greater

leniency in prosecuting his case than what would be afforded a licensed attorney, this lenience

does not and cannot reach the level that Plaintiff suggests (i.e., his *pro se* status does not immunize

him against the Court finding his Second Amended Complaint constitutes a futile amendment).

*United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (*pro se* litigants are still required to provide

sufficient facts in support of their claims). Even so, the Magistrate Judge has considered both that

Plaintiff is not a native English speaker and is prosecuting this case as a *pro se* litigant not only in

its Report and Recommendation (Dkt. #75 at 2, 3), but throughout this case's record by granting

Plaintiff multiple extensions and additional opportunities to prosecute and explain why his case

should not be dismissed (Dkts. #44, #51, #54, #65). Plaintiff's argument that the Magistrate Judge

did not consider his alleged disability and *pro se* status is unfounded. For these reasons, this

objection is overruled.

### C.     *Rule 15(a)(2) Factors*

Plaintiff objects to the Magistrate Judge's finding that his Second Amended Complaint

evidenced Plaintiff's dilatory motive, would unduly prejudice Defendants, and constituted a futile

amendment. Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading

once as a matter of course within: (A) 21 days of serving it, or (B) if the pleading is one to which

a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after

service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Federal Rule of Civil

Procedure 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with

the opposing party's written consent or the court's leave." "The court should freely give leave

when justice so requires." Fed. R. Civ. P. 15(a)(2). "Denial of leave to amend may be warranted

for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

The Magistrate Judge found that "upon review, Plaintiff states no compelling reason for seeking to further amend his complaint nearly three months after the Court's March 29, 2017 Order" (Dkt. #79 at 4). The Report and Recommendation specifically stated that:

> Plaintiff's proposed amendments consist largely of details related to a hearing before Defendant Judge Fallon that Plaintiff, having attended the hearing several years prior, would have known about both before filing the instant suit and before filing the First Amended Complaint. And, in any event, leave to amend the added allegations and claims would be futile: the allegations simply do not cure the deficiencies raised in Defendants' Motion to Dismiss.

(Dkt. #75 at 4). The Magistrate Judge further found:

> Plaintiff admits he seeks leave now in part in order to restart the clock for service of process. Plaintiff also points to such personal issues as lack of sleep due to thunder, increased lawn-mowing obligations due to "frequent rains combined with abundant sunshine and high temperatures," well-being classes and exercises, and necessary car repairs, as reasons for delaying in filing this second amended complaint. Such reasons do not provide support for Plaintiff's request for leave. *Pro se* Plaintiff further argues justice requires leave to amend because he has had to forego several personal/professional development opportunities (such as developing a new patent and attending concerts) in order to prosecute his case.

(Dkt. #75 at 3).

Regarding dilatory motive and undue prejudice, Plaintiff argues that the Court "[has] it backwards" because he "do[es] not write [his] filings with dilatory motive, [he] need[s] extra time in order to read and write to file [his] pleadings" (Dkt. # 79 at 4). Plaintiff contends that the Magistrate Judge incorrectly concluded that Plaintiff purposefully delayed service, when he actually withheld service "out of necessity to finish complaint to serve defendants" (Dkt. #79 at 11). Plaintiff adds that the Magistrate Judge erred in not according weight to his other responsibilities like mowing the lawn and attending educational activities that occupied his time (Dkt. #79 at 11). Plaintiff also argues that "Defendants will have the opportunity to try to disprove

Plaintiff's claim and the evidence. The problem is that all the evidence is against defendants and there is nothing they can do except trying to use authoritarianism, more legal maneuvers, trying to get the help of other politicians, etc." (Dkt. #79 at 4).

The Court finds, as the Report and Recommendation concluded, that Plaintiff acted with dilatory motive by delaying the preparation of his Second Amended Complaint and that Defendants would be unduly prejudiced by this amendment. On March 29, 2017, the Court ordered Plaintiff to amend his Complaint by April 28, 2017 for the express purpose of considering all of his factual allegations and claims. Then, four months after the Court ordered him to file any and all claims he pursues in this lawsuit and only after Defendants had expended resources again moving to dismiss Plaintiff's claims did Plaintiff again seek leave yet again to file an amended complaint. Importantly, if Plaintiff needed an extension of time to file his amended complaint, he should have done as he has in this case previously: requested the Court grant him an extension of time (Dkts. #6, 50). However, Plaintiff did not request an extension of time. Instead, he timely filed his First Amended Complaint, allegedly with the knowledge that it would need to be amended: knowledge that he waited an additional three months to act on (and only after seeing that Defendants were moving to dismiss his claims). Finally, as the Report and Recommendation pointed out, Plaintiff stated in his Motion for Leave that he sought to delay service of his First Amended Complaint to ensure he was able to file his Second Amended Complaint (Dkt. #67 at 4-5) ("how could [Plaintiff] serve defendants with [the First Amended Complaint] without numbering [his] paragraphs, with incomplete paragraphs, with several other errors that [he] did not have time to check and correct?"). Furthermore, as the Magistrate Judge noted, Plaintiff evidences his dilatory motive in addressing the activities that he prioritized over prosecuting his lawsuit: namely, sleeping an extra two hours each night due to thunderstorms disrupting his sleep

at night; lawn-mowing; "tak[ing] a class that was very important for [his] wellbeing;" and attending a concert and firework show. Plaintiff's objection that the Magistrate Judge did not afford these activities greater weight in its analysis of whether to recommend granting Plaintiff leave is meritless. Accordingly, these objections are overruled.

Plaintiff also makes a single, conclusory argument related to the Magistrate Judge's finding of bad faith in Plaintiff's Motion for Leave. He asserts that there is no bad faith on Plaintiff's part because Defendants are liars (Dkt. #79 at 11). This argument is completely unfounded and fails to address the aim of this factor under Rule 15(a)(2). This objection is overruled.

Plaintiff objects that the Magistrate Judge incorrectly found that his Second Amended Complaint did not cure all of his pleading deficiencies and constituted a futile amendment (Dkt. #79 at 4-5). Plaintiff argues that "[i]t is not possible for Plaintiff's Amendment to be futile, because the laws protect his filing of [his Second Amended Complaint]: Pro Se, [OAA], [ADA]" (Dkt. #79 at 5). The Court agrees with the conclusion of the Magistrate Judge that Plaintiff's Second Amended Complaint fails to remedy Plaintiff's pleading deficiencies. Plaintiff was provided a detailed account of his pleading deficiencies in the previous report and recommendation entered and subsequently withdrawn in this case (Dkt. #40).[7] Plaintiff's First and Second Amended Complaints both fail to address the deficiencies within his pleadings. Plaintiff's proposed second Amended Complaint does not remedy any deficiencies in Plaintiff's First Amended Complaint, nor does it connect any of Plaintiff's research about racism in America to the claims he raises in this lawsuit. As is evident throughout the record, Plaintiff has squandered the multiple opportunities the Court has provided to him to best state his claims. As the Magistrate Judge found in both Reports, Plaintiff's complaint as amended is still subject to dismissal, and

---

[7] The previous Report and Recommendation was withdrawn by the Magistrate Judge to allow Plaintiff another opportunity to raise all claims and allegations before the Court in an amended complaint.

therefore, leave to further amend is appropriately denied. *See Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667 (5th Cir. 1981). Moreover, Plaintiff's arguments as to why his amendment is not futile does not address the pleading requirements necessary to survive a motion to dismiss. As discussed above, Plaintiff's argument that his pro se status makes it "impossible for his amendment to be futile" directly contradicts Fifth Circuit precedent. *Pineda*, 988 F.2d at 23. Furthermore, Plaintiff does not provide and the Court did not discover (upon independent research) any precedent that claims asserted under the ADA[8] or the OAA survive a motion to dismiss simply by virtue of their being claims under the ADA or OAA, as Plaintiff suggests.

Importantly, even if the Court were to find the Magistrate Judge's recommendation to deny filing of Plaintiff's Second Amended Complaint was incorrect, such finding would not affect the disposition of this case. The Magistrate Judge expressly considered Plaintiff's allegations in his Second Amended Complaint in recommending granting Defendants' Motions to Dismiss. Therefore, even if Plaintiff had been granted leave and Plaintiff's Second Amended Complaint was deemed filed, it would still be dismissed. Accordingly, Plaintiff's objections are overruled.

### 2.    *Defendants' Motions to Dismiss In Light of Plaintiff's Second Amended Complaint*

Plaintiff objects that his Second Amended Complaint "should be the live pleading and that makes [(Dkt. #76)] invalid in the sense that it is incomplete and therefore misleading" (Dkt. #79 at 14). To reiterate, in the Report recommending granting Defendants' Motions to Dismiss, the Magistrate Judge explicitly stated that in an abundance of caution, Plaintiff's Second Amended Complaint was considered in the analysis of Plaintiff's claims, and Plaintiff's claims were still found to be lacking (Dkt. #76 at 8, n. 5). Further, the Court finds, as the Report and Recommendation concluded, that the allegations raised in Plaintiff's Second Amended Complaint

---

[8] Additionally, even if Plaintiff is disabled under the ADA, this neither absolves him of the federal pleading requirements, nor makes his Second Amended Complaint a proper amendment.

cannot survive Defendants' Motions to Dismiss. Plaintiff's amendment fails to cure any of the pleading deficiencies previously brought to Plaintiff's attention. Plaintiff's objection is overruled.

**CONCLUSION**

Having considered Plaintiff's timely filed objections (Dkt. #79), and having conducted a de novo review, the Court adopts the Magistrate Judge's reports (Dkts. #75, 76) as the findings and conclusions of the Court.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (SAC) to Serve New Defendants (Dkt. #67) is **DENIED**, Defendants' Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1) (Dkt. #2) and Defendants' Supplemental Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #64) are **GRANTED**; and each and every of Plaintiff's claims are hereby **DISMISSED** with prejudice.

All relief not previously granted is **DENIED**.

The Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED**.
**SIGNED this 18th day of October, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE